1426 Ormco Corporation v. Align Technology Good morning, everyone. Council, before we start, there was a motion filed with respect to supplemental joint appendix, and the panel has decided to allow the filing of the supplemental joint appendix. So a formal order will go out, but just so you're aware of that at the start of oral argument. Mr. DeBruin, is that how you pronounce your name? That's correct, Your Honor. And you have five minutes for rebuttal, correct? That's correct. Okay, you can start whenever you're ready. Thank you. May it please the Court, this Court must reverse the grant of summary judgment of infringement in this case if it is to remain consistent with this Court's decision in the cross-medical products case v. Mitt Romney? Before you get into that, could you help me to understand what we need to decide in this case? There are issues of infringement, there are issues of anticipation and obviousness and inequitable conduct. Do you, other than resisting a finding of infringement, do you care about the other issues? For example, if we were to find that a claim was not infringed as a matter of claim construction and infringement analysis, do you want us to go on and decide the inequitable conduct and obviousness issues anyway? Well, Your Honor, the infringement issues affect all the claims except for one. Claim 10. That is claim 10 of the 548 patent. Claim 10 of the 548 patent, we are not going to do that. That is the answer to my question. If we were to find, say, that claim 17 was not infringed, do you want us to nonetheless go on and decide the obviousness and anticipation and inequitable conduct issues? Yes, we do, Your Honor, because specifically the anticipation, we think that is really the only thing that this Court needs to do if it agrees with us with respect to the infringement issue, is address claim 10's validity. With respect to that, it can be determined based on anticipation. It can be determined based on obviousness. Both of those are issues on which the lower court held that the claim was not invalid. We had moved for summary judgment, AOA and ORMCO had moved for summary judgment under Celotex, and we believe that we are entitled to summary judgment on claim 10 with respect to that. If the Court agrees that claim 10 is invalid under any cause, we see no need to go on to the inequitable conduct issues. And the same for the other claims, too? If they were found unanticipated or obvious, we don't need to go on and decide inequitable conduct? That would be true, Your Honor. With respect to cross-medical, I'm not going to belabor the point because Align did not address that case in their briefing, and we really see no basis for distinguishing cross-medical from the facts of this case. In fact, cross-medical was an appeal from a decision from the very same district judge that issued the decisions in this case. He employed the very same capable of analysis and cited the same authority from this Court in doing so as he has done in the decisions here. But one point I would like to make is that the result here should be somewhat different in the sense that in the cross-medical case, there were facts suggesting the possibility of an inducement claim. And in this case, that is not true. In this case, there is absolutely no evidence of any orthodontist actually using the product in the way required by the claims. And so in this case, instead of a remand for further proceedings, this Court should not only reverse the district judge as to his findings of infringement, but should reverse the district court's failure to grant summary judgment to AOA and ORMCO. And I think this Court very recently in the exigent technology case that came down on March 22nd, emphasized the importance when a party brings a Solitex motion of the requirement that the party with the burden of proof come forward with all the evidence that they intend to rely on to overcome the motion and to get their claim to the jury. So you're saying, Mr. DeBruin, with respect to Claim 17 of the 548 and Claim 1 of the 611, if one were to agree with your claim construction argument slash infringement argument, the answer is a reversal rather than a vacatur? That is correct, Your Honor. And why is that again? Because AOA and ORMCO had moved for summary judgment finding that there was no infringement under Solitex. And at that point, it was required that Align bring forward all of their evidence upon which they intended to base their claim of infringement. They chose to rely upon the capable of argument. They did not bring forward any evidence of anyone, either AOA or ORMCO or the orthodontist actually using the products as required by those claims. So there's absolutely no basis in the record for any finding of direct infringement. Isn't the orthodontist the only missing piece in the record though? Is that a missing piece? Well, that is certainly a missing piece, yes. What else is missing besides the orthodontist evidence? Well, there's no evidence of direct infringement. The claims require, I'm talking now about Claim 17 of the 548 and Claim 1 and the dependent claims of the 611 patent. Those claims all require that the appliances be used in a particular way. There is no evidence of any such use by anyone. Did you move for summary judgment on that ground? We did. So, I think really across medical really answers the questions, most of the questions that are before the court today. I'd like to turn then to the issues surrounding Claim 10 of the 548 patent, which is the only claim on which we are not contesting infringement and where the result depends solely upon validity of the claim. Claim 10 is a dependent claim. It depends upon Claim 1 of the 548 patent, which the lower court held was in fact anticipated by the use of Dr. Raines. In fact, Claim 1 was also admittedly the practice of one of the inventors on the Align patent, and Dr. Ridgely, the only orthodontist among any of the inventors in that patent. But we are not relying upon him with regard to anticipation that comes up in the context of inequitable conduct due to corroboration issues. Claim 10, however, is a dependent claim off of this invalid Claim 1 and adds only the instructions that the patient is to wear the appliances in the order marked. Now we put forward evidence of a number of prior art that show instructions in various contexts, including instructions with regard to order of use. But with respect to anticipation... The FDA also requires instructions, you say, right? I'm sorry? The FDA requires instructions. The FDA does require that for any medical device a medical professional... Is this a medical device within the FDA definition? It is, Your Honor. Yes. So the particular use and prior art that we relied on for purposes of the anticipation argument was use and practice by Dr. Truax. Now Dr. Truax used the same kind of invisible plastic appliances, which have been known for decades. But he used appliances that were of different thickness to achieve different forces on the I get confused here. With respect to the obviousness claim, with respect to Claim 10, Rain says everything except instructions, right? Correct, Your Honor. There's no dispute about that? No dispute about that. And the question is, was the adding of the instructions obvious, right? That is the question under obviousness, yes. And the FDA, you say, requires instructions, right? The FDA requires instructions. Isn't that, is that enough in and of itself? Well, I believe it is. And, in fact, this court recently addressed that issue in the context of the... The name of the case is escaping me now, but... Oh, it's... I'm sorry, I don't have the case name on my fingertips. But this court recently addressed the fact that FDA requirements can indicate a motivation to do what the FDA requires in connection with a medical device. And in this case, the CFR regulations that we cited did require instructions in connection with the use of this type of device. That's the obviousness analysis. Coming back to the anticipation in Dr. Truax, he actually used three appliances. That's the question of whether a thickness is a geometry question. Absolutely. Claim construction matter, Your Honor. And the claim construction was not contested. Align did not take issue and hasn't taken issue on this appeal with the lower court's construction of the term geometry. But their argument implicitly does. Because their argument is that geometry does not refer to something such as thickness, which in three dimensions is certainly an aspect of the lines, points, and planes of the device. But rather, they argue that what was really meant here was cavity, cavity shape. And that quite simply is not what the construction was. And secondly, it would be an improper construction if that were the construction given to the term. The court arrived at its own construction, which at this point in the case, nobody can test. And that is a figure characterized by points, lines, and planes. Mr. Boone, you're into your rebuttal. Do you want to use your time as you wish? I'll take my time in rebuttal. Thank you. Okay. We'll give you your full time. You'd only used about a minute. So you'll have your full five minutes. Thank you. Ms. Rogoski, did I pronounce that correctly? Yes, Your Honor. Okay. Good morning. May it please the court. In responding to Mr. de Bruin's arguments... You have a problem on the invalidity issues. I'm sorry? You have a problem on the invalidity issues. With respect to Claim 10, Reins has everything except the instructions, right? With respect to Claim 10? Yes. The lower court found that the other elements were present, correct. Right. Okay. And you're not contesting that on appeal, right? I don't believe that we have the right to contest it on ORMCO's appeal. There was not a final decision at the time this was filed. So the question is whether adding the instructions was obvious. If the FDA requires instructions, why isn't that obvious? There is no evidence in the record, Your Honor, that Dr. Reins' appliance was FDA approved. Certainly if it had been, that would have come out in his deposition. And if it was FDA approved and instruction were required, presumably we would have seen some instructions. Within the meaning of the FDA statute and regulations, aren't these medical devices which would be subject to the instructions requirement? That very well may be the case, but Dr. Reins did not provide more than one appliance at a time, so there would be no reason to provide instructions on the order of use. There may have been a reason to provide instructions on use and care of the appliances, but he did not provide more than one appliance at a time, so there would be no reason to provide instructions as to order of use. Is that the finding of the district court here? The district court did find that Dr. Reins only provided one appliance at a time. He did not address, the court did not address the FDA question. It was not before the court at that point. So your contention is that the FDA wouldn't require instructions about order of use if you only supplied one at a time? That's correct, Your Honor. I believe that the FDA would not require instructions for something that the appliances were not used for. But why isn't supplying instructions sort of obvious from the general practice of supplying instructions for all kinds of medical devices and things like that? I think providing instructions generally for the information the patient needs to use the device would be obvious, but providing instructions as to order of use when more than one appliance is not given to a patient at a time is not obvious. No, no, but here the three things were supplied under this patent, were supplied at the same time. Why isn't it obvious to instruct the patient about the order of use of the three things that the patient is given? Your Honor, in looking at what was in the prior art, in looking at what the prior use was, there was no occasion where three appliances were provided at one time. No, but we've recently held that you can take from another field things that are very common and apply them to the field of the patent. And in general, when you give things to people, you give them instructions. Why isn't it obvious to give somebody instructions when you give them these three retainers? Because they did not give three retainers in the prior art. No, no, I'm not talking about the prior art. I'm talking about this, under this patent. Why isn't it obvious to take these other features from the prior art, which are all there in reigns, and add instructions? Why isn't it perfectly obvious to do that? And, you know, without any evidence that it was done before. I believe that someone could provide three appliances that are marked to indicate order of use without also providing instructions regarding the order of use. Presumably, an orthodontist could provide three appliances that have red, white, and blue, and you can follow red, white, and blue, but to also provide instructions to tell the patient, wear the first appliance for two weeks. And when you have worn that for two weeks, then you want to go to this next appliance. You mean just, you're suggesting that someone, a dentist, would just leave people sort of totally up in the air. Here are these three things. You figure it out. I just don't believe that anyone was doing that before the patent was filed, Your Honor. And if we look at obviousness as a principle, one thing that we need to take into account from the Demzak case of this court is that when you have less technologically complex inventions, it is even more important that you have a rigorous application of the obviousness standards. We have not seen a rigorous application of the obviousness standards in this case. We have to look at the prior art, the scope and content, the differences between that prior art and the invention at issue. What about the obviousness thing with respect to Claim 17? As I understand this, it has to do with the intervals of use, which are 2 to 21 days. Because Raines said change them every three weeks, that is 21 days. It was one day off, so it's not obvious. Dr. Raines. Am I understanding what the district court found? The district court found it was not obvious to change the appliances in 2 to 20 days. And because it was 21 days. It's a day off. It's not obvious to change 21 to 20. I think there's more to it than that, Your Honor. I believe that with Dr. Raines, he had a number of different times that he tried. He had not arrived at a solution to the problem of how long do I treat this patient with any one appliance until he reached the three weeks. He started with four weeks. But he told them three weeks, right? No, he started with four weeks. But there was a time at which he told them three weeks. Eventually he did. So why wouldn't that be anticipatory? It's because it's 21 days rather than 20 days, right? Right. So the changing from 21 days to 20 days isn't obvious. If it had been obvious, Your Honor, why didn't Dr. Raines use 20 days? Maybe it doesn't make any difference. He testified that the standard time interval in orthodontia was four weeks. So as you get further and further away from the standard, you're less and less likely to go to shorter and shorter time frames. We're not talking about starting at three weeks and then moving down. The standard was four weeks. But what about the single package? What about claim one of the other path? Putting the three things in a single package isn't obvious? Not if you look at the admissible evidence in this case of prior use. If you look at the prior art and you apply the standard rigorously. No, Your Honor, I do not believe so. What's the evidence that the commercial success had to do with single package providing the instructions in 20 days rather than 21 days? There's evidence in the record, Your Honor, that patients were looking for shorter, less time in the orthodontic chair, more freedom. No, no, but I'm talking about those specific things. What's the evidence that commercial success had to do with putting them all in a single package that it had to do with intervals of 20 days rather than 21 days and that it had to do with providing instructions? If you look at the claim elements we have. Is there any specific evidence that the commercial success was due to those three things? There is evidence that it was due at least in part to those three things, yes. Where do I find that? In the Prescott Declaration, in Dr. Covell's report, neither of which have been rebutted by ORMCA. Okay, but show me where your expert says that the commercial success was due to any of those three features. In our expert at 83015, discusses the long-felt need of more aesthetic appliances, polymeric appliances, and reducing chair time, which when you provide all three appliances at one time, the patient does not need to come back three or more occasions to receive each appliance. What does that have to do with putting them in a single package? If you provide them together in a single package, the patient can take that at one time. But suppose the patient gets them in three separate packages at the same time. What difference does that make? I don't know why you would provide a patient with three separate packages at one time when you could provide them in a single package. Well, I don't either. There's no evidence in the record of providing three separate packages rather than a single package. Where does somebody say that the instructions make a difference? I do not believe that there is a specific statement about instructions and secondary considerations, Your Honor. Okay, how about a statement about 20 days rather than 21 days? That, I think, goes to the more aesthetic appliances. Wearing them for a less amount of time means that they aren't as worn and they appear more aesthetic. That is addressed at... Doesn't the time period really depend on the geometry itself as to what movement you expect from the appliance? Certainly you cannot move... Some people might have less movement so you don't need the appliance as long so it could be less than 20 days, it could be less than 21 days. Others might need more so it could be greater than 21 days. Sure. I think that the amount of movement you are trying to accomplish with any one appliance dictates how long the appliance should be worn. So it's not a strict rule of 2 to 20 days. It could be 21 days, it could be 28 days. It depends on the appliance, it depends on the orthodontist. Under the patent it is 2 to 20 days. It depends on the movement that you're anticipating from the appliance itself. Sure. If I could briefly address the statement by opposing counsel that a line has not addressed the question of direct infringement in the inducement analysis. If I could direct the court's attention to the confidential joint appendix A0001 to 2092 at page A496 to 497. This is an article by Dr. Moles, a practicing orthodontist. This article was published by AOA. This article addresses Dr. Moles' treatment of a patient with red, white, and blue. And if you look on page 497, you'll see under patient delivery, he advises when the system arrives from the laboratory, deliver the retainers to the patient, indicating he is delivering the retainers to the patient at a single time. Under patient instructions, he teaches in the third sentence, after two weeks the patient will change to the white retainer and two weeks later to the blue one. If there was any question about Dr. Moles actually practicing the patented method, we can look at the mild tooth malalignment case in the top right of page 497, which shows the pre-treatment and post-treatment after treatment with red, white, and blue. He states under the post-treatment, the patient wore upper and lower retainers for six weeks to correct crowding. This is direct infringement. We have two weeks per appliance for a total of six weeks. We have delivery to the patient upon receipt of the appliances. We know that there are instructions. There's no dispute that there's infringement of Claim 10. Right here on these two pages shows direct infringement of an orthodontist. It shows potentially inducement, but was there any direct? Correct. Did anybody do what was suggested in here? This shows that Dr. Moles did. He's an orthodontist. He's showing the treatment that he accomplished with red, white, and blue. This is direct evidence that he practiced the method or used the appliances. Then we need only look at the intent to induce, which really is overwhelming. If you look at the evidence submitted in Align's responsive brief, we have on the packaging, ORMCO and AOA sending boxes of appliances to the orthodontist, sending within that box packaging three appliances for a single arch, red, white, and blue, in a plastic bag. We have AOA marketing material saying, receive these appliances from AOA then for the most reappointment flexibility. Deliver all at one time. We have Mr. Fuller of AOA stating a reasonably sophisticated patient could receive all three appliances from the doctor. But that's a suggestion to do it. It doesn't show that that was done, does it? That's the intent to induce prong, and we have Dr. Moll saying that that's exactly what he does. When he receives it from AOA, he delivers it to the patient on page 497. On the question of timing of 2 to 20 days, in addition to Dr. Moll's article, we have Mr. Fuller's testimony acknowledging that AOA's literature supports appliances being worn for 2 to 4 weeks. 2 weeks falls within the 2 to 20 days. We have an FDA submission by AOA stating, each aligner is worn for a 2-week period at A0910. That is intent to induce, and Dr. Moll shows us that orthodontists are following AOA's instructions and directly infringing. That combination gives us inducement to infringe, even if the capable of arguments do not carry the day, we do have inducement to infringe. You would say that's if one disagreed with the district court's claim construction. Correct. I think there are two other bases on which the district court's finding of infringement can be affirmed, either on capable of infringement or the claim construction of infringement. Are you defending the capable of claim construction? I see that my time has ended. May I respond to that? Yes, you can answer. With respect to the capable of claim construction, I do believe there is evidence in the record that would support claim construction of capable of for supplying the appliances in a single package to the patients. If we look at the key pharmaceutical case, there are some close similarities. What about the other capable of construction? For the 2-20 days? Mm-hmm. I think that is more supported through the capable of infringement in looking at some of the cases that have functional limitations as well as structural, looking at whether the functional limitation is present through a capable of analysis, we believe is supported by the case law. And in this case, there is evidence that the appliances are capable of being worn in 2-20 day periods. There are no further questions. Thank you, Ms. Rogoski. Mr. DeBruin? I said you have your five minutes. Thank you, Your Honor. Let me ask you, what is your response to Ms. Rogoski's citation to this material at 496, 497, the Moles article? Had Dr. Moles been called as a witness? Had he been deposed? And he came in and said that, yes, I gave them an appliance, and after two weeks I gave them a second appliance, and after two more weeks I gave them the third appliance. That would be evidence from which they could argue direct infringement. That would get them to the jury. This does not. This is inadmissible evidence for that purpose. And even if you take at face value what these pictures purport to say, there's nothing to indicate that the patient who wore the upper and lower retainers for six weeks wore each one of those retainers for two weeks or three weeks or whatever. We do not know what Mr. Moles actually did. This is his recommendation. As Judge Dyke points out, it may be inducement by Dr. Moles. It may be inducement by AOA because they published it in their newsletter. But it is not evidence of direct infringement. But it is capable of, right? I'm sorry? It is capable of being used within that particular method. It does indicate that Dr. Moles believed it to be capable of being used in that time frame, yes. So it would meet the interpretation by the district court on that basis. If capable of is the appropriate claim construction, yes. I'm assuming it is. That's correct. Now, I would like to address the question raised by Judge Dyke with regard to Dr. Raines because you asked some questions with regard to his practice. Well, the district court actually found that Dr. Raines did switch appliances in a two-week time period. His testimony was that he used the appliances in a period from two to four weeks. And the reason that the lower court did not find that that was sufficient for purposes of invalidity was because he determined that the record was insufficient to establish that each of the three appliances that Dr. Raines used was in for no more than two, was in for a period of two to 20 days. In other words, that two to 20-day period has to apply with regard to each and every appliance that's used. That's what the lower court's construction was, and that's not disputed here. So that was the problem. So when it comes to the issue of obviousness, Dr. Raines had done it with regard to individual appliances. We just didn't have quite the right testimony from him that he did it with each and every one of those appliances. And so the lower court disregarded that testimony from the standpoint of invalidity. With regard to obviousness, the file histories of these patents are replete with answers to the questions of obviousness. Because in addition to Dr. Raines, we had lots of other evidence of other doctors using these kind of appliances. One of those doctors was Dr. Harrell. And the evidence, there were a lot of factual disputes with regard to what Dr. Harrell did or didn't do with various patients. But the one fact that is not disputed is that with regard to patient SP, Dr. Harrell used at least two appliances that were made, in fact made by AOA and given to Dr. Harrell. And those appliances were marked to indicate their order of use. They had notches on them to indicate number one and number two. He had testified as well that he had received appliances with other patients that were marked to indicate their order in which they should be used. We just didn't have the definitive evidence of three in a row. But if you look at the parent application, the file history for the parent application here, the 893 patent, the patent office found in their very first office action that it was known to use multiple appliances. In fact, in that case, they had a piece of prior art that suggested using seven or eight in a row. So this was obvious to go to three. And that also provides an independent basis for the obviousness finding. Your Honors, in conclusion, I would just like to emphasize that with respect to the infringement issues before you, you should not only reverse the grant of summary judgment to a line, but you should direct that summary judgment be entered in favor of ORMCO. You should also find that the claim 10 of the 548 patent is invalid as a matter of law. Thank you very much. Thank you, Mr. DeBruin. The case is submitted. Third case.